ACCEPTED
04-14-00740-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/26/2015 5:54:47 PM
KEITH HOTTLE
CLERK

NO. 04-14-00740-CV

## IN THE COURT OF APPEALS
## FOR THE FOURTH JUDICIAL DISTRICT OF TEXAS
## AT SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
3/26/2015 5:54:47 PM
KEITH E. HOTTLE
Clerk

**ART REYNA,**

Appellant

**V.**

**IRENE BALDRIDGE AND KATHY HILL,**

Appellees

Interlocutory Appeal from
Cause No. 2014-CI-03985
285th District Court, Bexar County, Texas
The Honorable Judge Cathleen M. Stryker Presiding

## BRIEF OF APPELLEES IRENE BALDRIDGE AND KATHY HILL

Edward P. Cano
Texas Bar No. 03756700
201 W. Poplar St.
San Antonio, Texas 78212
(210) 223-1099 (telephone)
(210) 212-5653 (facsimile)
edcanoattorney@sbcglobal.net

Darby Riley
Texas Bar No. 16924400
Riley & Riley
Attorneys at Law
320 Lexington Avenue
San Antonio, Texas 78215
(210) 225-7236 (telephone)
(210) 227-7907 (facsimile)
darbyriley@rileylawfirm.com

ATTORNEYS FOR APPELLEES

ORAL ARGUMENT REQUESTED

i

# TABLE OF CONTENTS

                                                                                                    Page

APPENDIX ................................................................................................ iv

INDEX OF AUTHORITIES ....................................................................... v

SUMMARY OF THE ARGUMENT ............................................................ 2

ARGUMENT ............................................................................................. 4

RESPONSE TO APPELLANT'S ISSUE NO. 1 - APPELLEES'
    BURDEN OF PROOF UNDER THE TCPA

RESPONSE TO APPELLANT'S ISSUES NO. 2, 4 and 5 - IRENE
    BALDRIDGE PRESENTED CLEAR AND SPECIFIC
    EVIDENCE THAT REYNA LIBELED HER WITH ACTUAL
    MALICE

I.      Baldridge presented clear and specific prima facie evidence
        that the published material was false. ..................................... 5

II.     The published material was defamatory per se as to Irene
        Baldridge, and damages are presumed. .................................. 8

III.    Baldridge has presented clear and specific prima facie
        evidence that Reyna published the written defamation with
        actual malice. ........................................................................ 9

        A.    Circumstantial evidence of actual malice may be
        considered under the TCPA - Clear inferences can be drawn
        from specific facts. ................................................................ 9

        B.    Baldridge presented clear and specific evidence that
        Reyna's libelous statement was made with actual malice. ........ 12

              1.    How actual malice is established ..................................... 12

              2. Actual Malice:  Clear and specific circumstances
              establish a prima facie case that Reyna knew the
              claim that Baldridge had a conflict of interest was
              false, or that he entertained serious doubts about its
              truth. ............................................................................. 15

ii

a.  Direct evidence that Reyna seriously doubted the truth of the claim. ...................................................................17

b.  Not even a cursory investigation. ...............................................17

c.  Timing indicates Reyna did not believe the claims. ....................18

d.  Post-election comments by Reyna indicate he did not believe the claims. ...................................................................19

e.  Pattern of lying about political opponents. ..................................19

f.  Claim of conflict of interest is illogical. ........................................20

g.  Direct evidence:  Affidavit of Art Reyna in the Bee lawsuit, CR91. ...................................................................20

h.  Reyna was strongly motivated to lie about Baldridge, Hill and Alcocer. ...................................................................21

RESPONSE TO APPELLANT'S ISSUES NO. 3, 4 and 5 - KATHY HILL PRESENTED CLEAR AND SPECIFIC EVIDENCE THAT REYNA LIBELED HER MALICIOUSLY

I. Kathy Hill presented clear and specific prima facie evidence that the published material was false and defamatory........................................21

A.  The material was defamatory. .....................................................21

B.  The material was false...................................................................23

C.  General damages are both proven and presumed.......................24

II.    Kathy Hill presented clear and specific prima facie evidence that Reyna acted with actual malice.................................................24

RESPONSE TO APPELLANT'S ISSUE NO. 6 - ATTORNEY'S FEES ARE NOT MANDATORY UNDER §27.009(A)(I) UNLESS "JUSTICE AND EQUITY" REQUIRE THEM

CERTIFICATE OF COMPLIANCE...........................................................28

CERTIFICATE OF SERVICE...................................................................28

# APPENDIX

1.    Campaign mailout in question (CR 6-7)
2.    TEX. CIV. PRAC. & REM. CODE Chapter 27

iv

# INDEX OF AUTHORITIES

**Cases**                                                                      **Page**

*Bentley v. Bunton,*
94 S.W.3d 561 (Tex. 2002) .................................... 11, 12, 13, 14, 18, 21

*S. Cantu & Son v. Ramirez,*
101 S.W.2d 820 (Tex. Civ. App.—San Antonio 1936, no writ) ............ 9, 10

*Carr v. Brasher,*
776 S.W.2d 567 (Tex. 1989) ................................................................12

*Clark v. Jenkins,*
248 S.W.3d 418 (Tex. App.—Amarillo 2008, pet. denied,
cert. denied)................................................................................... 12, 17

*Combined Law Enforcement Associations of Texas v. Sheffield,*
2014 WL 411672 (Tex. App.—Austin 2014, pet. filed) ........................27

*Curtis Publishing Co. v. Butts,*
388 U.S. 130 (1967)........................................................................ 13, 18

*D. R. Partners v. Floyd,*
228 S.W.3d 493 (Tex. App.—Texarkana 2007, pet. denied) ..................13

*Dolcefino v. Turner,*
987 S.W.2d 100 (Tex. App.--Houston [14th Dist.] 1998, aff'd).................13

*Farias v. Garza,*
426 S.W.3d 808 (Tex. App.—San Antonio 2014, pet. filed)....................10

*French v. French,*
385 S.W.3d 61 (Tex. App.—Waco 2012, pet. denied)............................12

*Gray v. H.E.B. Food Store No. 4,*
941 S.W.2d 327 (Tex. App.—Corpus Christi 1997, writ denied)..........8, 23

*Hancock v. Variyam,*
400 S.W.3d 59 (Tex. 2013).............................................................. 8, 23

*Harte Hanks Communications, Inc. v. Connaughton,*
491 U.S. 657 (1989)....................................................................... 14, 20

*Hartsfield v. State,*
200 S.W.3d 813 (Tex. App.—Texarkana 2006, pet. for rev. denied).......11

*Hooper v. State,*
214 S.W.3d 9 (Tex. Crim. App. 2007)...................................................11

*International G.N.R.Co. v. Edmundson,*
222 S.W. 181 (Tex. Comm. App. 1920, holding approved) ....................13

*Kirschner v. State,*
997 S.W.2d 335 (Tex. App.—Austin 1999, pet. for rev. refused).............22

*McDonald v. Clemens,*
464 S.W.2d 450 (Tex. Civ. App.—Tyler 1971, no writ).......................9, 10

*McDonald v. Smith,*
 472 US 479 (1985)..................................................................................2

*Moak v. Huff,*
 2012 WL 566140 *8 (Tex. App.—San Antonio 2012, no pet.) ................22

*Neely v. Wilson,*
 418 S.W.3d 52 (Tex. 2013)......................................................................7

*Procter & Gamble Mfg. Co. v. Hagler,*
 880 S.W.2d 123 (Tex. App.—Texarkana, writ denied, 884 S.W.2d 771
 (Tex. 1994))...........................................................................................13

*Rehak Creative Services, Inc. v. Witt,*
 404 S.W.3d 716 (Tex. App.—Houston [14th Dist.] 2013,
 pet. denied)..................................................................................4, 9, 10

*Spoljaric v. Percival Tours, Inc.,*
 708 S.W.2d 432 (Tex. 1986)...........................................................10, 12

*St. Amant v. Thompson,*
 390 U.S. 727 (1968)................................................................................14

*Talamantez v. State,*
 829 S.W.2d 174 (Tex. Crim. App. 1992) ................................................22

*Turner v. KTRK Television, Inc.,* 38 S.W.3d 103 (Tex. 2000)..............6, 13

*Waste Management of Texas, Inc. v. Texas Disposal System Landfill, Inc.,*
 434 S.W.3d 142 (Tex. 2014)...............................................................9, 24

**Rules and Statutes**
Texas Rule of Appellate Procedure 9.4(i)(3)...........................................28
§27.001(1), (3), Tex. Civ. Prac. and Rem. Code ......................................4
§27.005, Tex. Civ. Prac. and Rem. Code....................................................4
§27.009, Tex. Civ. Prac. and Rem. Code...................................................27
§27.009(a)(i), Tex. Civ. Prac. and Rem. Code .........................................27
§73.001, Tex. Civ. Prac. and Rem. Code....................................................4
§171.004, Texas Local Government Code....................................................6
§21.022, Texas Local Government Code................................................6, 22
§36.08(e), Texas Penal Code .......................................................................6
§39.02(a)(2), Texas Penal Code................................................................22
§§162.005, 162.032, Tex. Prop. Code Ann. .............................................22

**Other Authorities**
Merriam-Webster's Collegiate Dictionary (11th ed. 2003) .........................10
Texas Pattern Jury Charges, General Negligence, §1.8 (2014) ...............11
Websters New Universal Unabridged Dictionary (1983)............................22
World Book Dictionary, Vol. 1, p. 615 (1988) ...........................................22

NO. 04-14-00740-CV

IN THE COURT OF APPEALS
FOR THE FOURTH JUDICIAL DISTRICT OF TEXAS
AT SAN ANTONIO

ART REYNA,

Appellant

V.

IRENE BALDRIDGE AND KATHY HILL,

Appellees

Interlocutory Appeal from
Cause No. 2014-CI-03985
285th District Court, Bexar County, Texas
The Honorable Judge Cathleen M. Stryker Presiding

BRIEF OF APPELLEES IRENE BALDRIDGE AND KATHY HILL

TO THE HONORABLE FOURTH COURT OF APPEALS:

Appellees, IRENE BALDRIDGE and KATHY HILL, respectfully submit

the following Brief for Interlocutory Appeal.

1

## SUMMARY OF THE ARGUMENT

"At the time the First Amendment was adopted, as today, there were those unscrupulous enough and skillful enough to use the deliberate or reckless falsehood as an effective political tool to unseat the public servant or even to topple an administration… That speech is made as a tool for political ends does not automatically bring it under the protection of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and the orderly manner in which economic, social or political change is to be effected." *McDonald v. Smith,* 472 U.S. 479, 489 (1985).

The trial court properly denied Art Reyna's Motion to Dismiss under the Texas Citizen Participation Act (Appendix 2), which is designed to screen groundless and abusive cases at an early stage, rather than to dismiss meritorious ones before discovery is conducted.

Irene Baldridge presented extensive evidence at the hearing, including six affidavits, to establish a prima facie case that Reyna, a Leon Valley city council member, accused her, in a widely distributed campaign piece, of voting as a city council member against a zoning case two years earlier despite a personal economic interest in the case; that this published claim (Appendix 1) was outrageously false and defamatory per se; and that Reyna knew it was false, or was in reckless disregard of whether it was true or not, at the time he published it. Baldridge further presented evidence that she suffered general damages, which are presumed, including humiliation,

2

embarrassment, anger, mental anguish, and damage to her long-standing good reputation as a realtor and elected representative.

Kathy Hill presented extensive evidence at the hearing, including three affidavits and other documents, to establish a prima facie case that Reyna accused her, as a city council member, in that same campaign piece (Appendix 1) of diverting public funds to a private interest group; that such claim was also outrageously false and defamatory per se; that Reyna, as a council member, knew it was false or was in reckless disregard of whether it was true or not, at the time he published it; and that as a result she suffered great humiliation, embarrassment, anger, mental anguish and damage to her previously excellent reputation.

Despite the fact that almost no discovery has been permitted at this point under the TCPA, Hill and Baldridge presented extensive circumstantial (and some direct) evidence to establish a prima facie case that Reyna entertained serious doubts about the truth of the claims he made (actual malice).

The evidence presented clearly and specifically made a prima facie case as to each essential element of libel against public officials: false statements which were defamatory per se, made with actual malice, and causing actual and presumed general damages.

3

## ARGUMENT

## RESPONSE TO APPELLANT'S ISSUE NO. 1

### APPELLEES' BURDEN OF PROOF UNDER THE TCPA

Appellees Baldridge and Hill do not contest that the libelous statements by Art Reyna were governed by the Texas Citizen Participation Act (TCPA), i.e., that they were communications made in connection with a matter of public concern. §27.001(1), (3), TEX. CIV. PRAC. AND REM. CODE.

Appellees also acknowledge that they had the burden to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." §27.005.

The elements of libel are statutorily defined: "A libel is a defamation expressed in written or graphic form... that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation...." §73.001, TEX. CIV. PRAC. AND REM. CODE.

Public officials like appellees Baldridge and Hill had the additional burden to present prima facie proof that the written defamation was published with actual malice, i.e., with knowledge of its falsity or reckless disregard as to its truth. *Rehak Creative Services, Inc. v. Witt*, 404 S.W.3d 716, 727 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

4

## RESPONSE TO APPELLANT'S ISSUES NO. 2, 4 and 5

## IRENE BALDRIDGE PRESENTED CLEAR AND SPECIFIC EVIDENCE THAT REYNA LIBELED HER WITH ACTUAL MALICE.

### I. Baldridge presented clear and specific prima facie evidence that the published material was false.

The campaign mailout in question (CR 6-7, Appendix 1) quotes a lawsuit which had been pending in Bexar County District Court for three months at the time of the Leon Valley City Council election of May 11, 2013. The suit was filed at the beginning of the 2013 election campaign by real estate broker Daniel Bee, a political ally of Reyna, against two candidates for council, Baldridge and Alcocer, who had opposed Bee's March 2011 zoning case. (Reyna had actively supported the zoning case but voted against it when it was clear it would fail: all five councilpersons, including Baldridge and Hill, voted against Bee's zoning case). CR 63-64.

The Bee lawsuit was filed against the City of Leon Valley, Baldridge, Alcocer, and several other Leon Valley citizens who had vocally opposed Bee's zoning case. Baldridge has filed a counterclaim in that suit alleging that Bee's suit against her is groundless and brought for an improper purpose, i.e., to help defeat Baldridge and Alcocer at the polls. (CR 64, 66)

Reyna's campaign piece quoted that portion of Bee's petition which alleges that Baldridge voted to deny the zoning "because she had a contractual or agency relationship with competing purchasers, buyers, and

5

developers." (CR 6) Reyna does not dispute that Bee's allegation is false. Appellant's Brief. pp. 15-18. The affidavit of the representative of the company with whom Baldridge, a realtor, was claimed to have a contractual relationship, makes clear that no such relationship *ever* existed. (Affidavit of Dave Matlock, CR 86-88; see also, Affidavit of Irene Baldridge, CR 74-76).

Nor does Reyna dispute that the allegation accuses Baldridge of "criminal wrongdoing." Appellant's Brief, p. 18. If the claim that Baldridge had a conflict of interest in the zoning case was true, such conduct would constitute a Class A misdemeanor under both §36.08(e), TEXAS PENAL CODE and §171.004, Texas Local Government Code, and would justify removal from office under §21.022, TEXAS LOCAL GOVERNMENT CODE.

Reyna's only dispute on the falsity issue is his claim that he merely quoted the pending suit and "did not state that the allegations made in the lawsuit that outlined criminal wrongdoing were true." Appellant's Brief, p. 16.

In fact, the clear gist of the campaign piece is Reyna's *adoption* of Bee's false allegation by asserting four times that Baldridge chose "private interests and personal gain [over] ... the public good." (CR 6-7). *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) ("The meaning of a publication and thus whether it is false and defamatory, depends on a reasonable person's perspective of the entirety of a publication and not merely on individual statements.") The piece does not merely assert that

6

Baldridge has been sued for alleged criminal wrongdoing; it states that her "record is clear – [she] chose private gain over the public good." It does not say that "the recent lawsuit" *alleged* criminal wrongdoing; it says the suit "outlined" criminal wrongdoing, i.e., described criminal conduct, implying such description to be truthful. The piece does not say that Baldridge is *accused* of corruption in office; rather, it falsely says in essence that Baldridge corruptly threw a zoning vote so she could make money as a realtor.

While Bee could rely on the judicial proceedings privilege in making his defamatory claims, Reyna could not. *Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2013). (Judicial proceedings privilege extends only to parties, witnesses, lawyers, judges, and jurors). And "… it is a well-settled legal principle that one is liable for republishing the defamatory statement of another." *Id.* at 61. Moreover, "it is the settled law of Texas that a false statement of fact concerning a public officer, even if made in a discussion of matters of public concern, is not privileged as fair comment." *Id.* at 62.

In sum, Baldridge has made a prima facie case, with abundant clear and specific evidence, that Reyna's printed and mailed campaign claims were false. It is false that Baldridge had an economic interest in the sale of the land in question, and it is consequently false that she thereby engaged

7

in criminal wrongdoing by putting her personal interests above the public good.

**II.     The published material was defamatory per se as to Irene Baldridge, and damages are presumed.**

The false claim that Baldridge engaged in "criminal wrongdoing" by voting to deny Bee's zoning request "because she had a contractual or agency relationship with competing purchasers, buyers, and developers" is defamatory per se in that, as shown, it imputes a crime to Baldridge, *Gray v. H.E.B. Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied); and in that it injures her in her office, profession, or occupation, both as a realtor and as an elected city council member, *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013).

Reyna is not a journalist. He wrote the campaign piece to citizens of Leon Valley, as a 7 year incumbent elected official, accusing fellow councilpersons of serious misconduct in carrying out their official duties. These claims carried credibility because Reyna was in a position to know the facts, the allegations were specific, and a citizen would not expect that Reyna would make such serious claims of official misconduct without investigation.

Texas law presumes that statements that are defamatory per se "injure the victim's reputation and entitle [her] to recover general damages, including damages for loss of reputation and mental anguish." *Waste Management of*

8

*Texas, Inc. v. Texas Disposal System Landfill, Inc.*, 434 S.W.3d 142, 151 (Tex. 2014).

**III.  Baldridge has presented clear and specific prima facie evidence that Reyna published the written defamation with actual malice.**

*A.  Circumstantial evidence of actual malice may be considered under the TCPA – Clear inferences can be drawn from specific facts.*

Appellant contradicts himself in first, admitting to this Court that, under numerous Texas defamation cases, it is usual and permissible that "the defendant's state of mind must be proved by circumstantial evidence" (Appellant's Brief; p. 15), and at the same time insisting that the trial court "should not have considered circumstantial evidence" of Reyna's actual malice (Appellant's Brief, p. 37).

At page 8 of his Brief, Appellant cites seven Court of Appeals cases in which the following partial definition of "clear and specific evidence" is quoted from *Rehak Creative Services, Inv. v. Witt*, 404 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. denied):

> "Clear and specific evidence' has been described as evidence that is 'unaided by presumptions, inferences, or intendments.' *McDonald v. Clemens*, 464 S.W.2d 450, 456 (Tex. Civ. App.— Tyler 1971, no writ); *see also S. Cantu & Son v. Ramirez*, 101 S.W.2d 820, 822 (Tex. Civ. App.—San Antonio 1936, no writ)."

The *McDonald* and *Cantu* cases cited in *Rehak* do not actually define clear and specific evidence. Both cases involve findings that the evidence presented did not establish fraud, and both state at the cited pages:

"Charges of fraud must be established by clear and specific evidence unaided by presumptions, inferences or intendments."[1]

Thus, in both *McDonald* and *Cantu*, the term "clear and specific evidence" is modified and embellished, rather than defined, by the phrase "unaided by presumptions, inferences, or intendments."

The better approach in interpreting §27.005 is to follow the dictionary definitions of "clear" and "specific," as was done in part in both *Rehak* and *Farias v. Garza*, 426 S.W.3d 808, 813-14 (Tex. App.—San Antonio 2014, pet. filed) (quoting Merriam-Webster's Collegiate Dictionary (11th ed. 2003):

"The Act does not define 'clear and specific' evidence, therefore, these terms are given their ordinary meaning [citations omitted]. 'Clear' means 'free from obscurity or ambiguity,' 'easily understood,' 'free from doubt,' or 'sure.' [citations omitted] 'Specific' means 'constituting or falling into a specifiable category,' free from ambiguity,' or 'accurate.' [citation omitted]."

Thus, neither the statutory language nor the dictionary definitions include the idea that clear inferences cannot be drawn from specific facts to meet the statutory standard. Neither the statutory language nor the

---

[1] But see *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986) (proof of intent to defraud requires circumstantial evidence).

10

dictionary definitions exclude circumstantial evidence from the court's consideration.

Indeed, no cause of action in this State precludes consideration of circumstantial evidence. Texas Pattern Jury Charges provides:

> "A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. *A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.*" Texas Pattern Jury Charges, General Negligence, §1.8 (2014) (emphasis added)

There is no degree of proof which does not allow for consideration of circumstantial evidence; inferences are *always* allowed from facts proved. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007): "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor [beyond a reasonable doubt], and circumstantial evidence alone can be sufficient to establish guilt." *See also Hartsfield v. State,* 200 S.W.3d 813 (Tex. App.—Texarkana 2006, pet. for rev. denied) (Capital murder conviction based on circumstantial evidence).

In civil cases where the defendant's intent or state of mind is in issue (as here, on whether defendant knew the statements were false or was in reckless disregard of their truth), circumstantial evidence is often the only way to prove the fact. *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002):

11

"The defendant's state of mind [in a defamation case by a public figure] can – indeed, must usually -- be proved by circumstantial evidence." *See also Clark v. Jenkins,* 248 S.W.3d 418, 435 (Tex. App.—Amarillo 2008, pet. denied, cert. denied) (In a defamation suit by a public official, "… a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence;" *French v. French,* 385 S.W.3d 61, 69 (Tex. App.—Waco 2012, pet. denied) (proof of malice in malicious prosecution case usually proved by circumstantial evidence); *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex. 1986). ("Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence.")

B.    *Baldridge presented clear and specific evidence that Reyna's libelous statement was made with actual malice.*

### 1.    How actual malice is established

As stated, "actual malice" in the libel context means the statement was made knowing it was false, or it was made with reckless disregard as to its truth. Reckless disregard involves "a high degree of probable falsity, for proof of which the plaintiff must present sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex. 1989); *Bentley v. Bunton,* 94 S.W.3d 561, 596 (Tex. 2002).

12

"Actual malice may be inferred from the relation of the parties, the circumstances attending the publication, the terms of the publication itself, and from the words or acts of the defendant before, at, or after the time of the communication, but it must be evidence from which the jury may infer malice existing at the time of publication and actuating it."

*International G.N.R.Co. v. Edmundson,* 222 S.W. 181, 184 (Tex. Comm. App. 1920, holding approved); *D. R. Partners v. Floyd,* 228 S.W.3d 493, 498 (Tex. App.—Texarkana 2007, pet. denied); *Dolcefino v. Turner,* 987 S.W.2d 100, 111-112 (Tex. App.--Houston [14th Dist.] 1998, aff'd), *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103 (Tex. 2000); *Procter & Gamble Mfg. Co. v. Hagler,* 880 S.W.2d 123, 126 (Tex. App.—Texarkana, writ denied, 884 S.W.2d 771 (Tex. 1994)). .

Thus, Reyna's contention (Appellant's Brief, p. 43) that post-libel conduct cannot be considered with respect to the issue of actual malice is incorrect.

*Bentley v. Bunton, supra,* includes a lengthy discussion of actual malice as defined by the U. S. Supreme Court. 94 S.W.3d at 590-600. Factors discussed in *Bentley* which may support a finding of actual malice, as pertinent to this case, include, from *Curtis Publishing Co. v. Butts,* 388 U.S. 130 (1967):

- a grossly inadequate investigation of the defamatory statement with full knowledge of the harm that would likely result. *Id.* at 156, 170

13

- failure to consider the credibility of the informant, and no independent corroboration of the claims. *Id.* at 158.

- motivation to find a scandalous story for other reasons. *Id.* at 158.

Additionally, if the defamatory matter is so inherently improbable that only a reckless person would have put it in circulation, actual malice may be found. *St. Amant v. Thompson*, 390 U.S. 727, 734 (1968). This was also a factor in a finding of actual malice in *Harte Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 691 (1989). There the defendant ignored clear contrary evidence and did not interview the witness to the defamatory material; and the story was improbable because the libeled person did not misuse the recorded statement in question, but turned it over to law enforcement authorities, i.e., the libeled person's actions tended to contradict the defamatory claim against him. *Id.*

In *Bentley*, the Texas Supreme Court found that the motive of the defendant case can be relevant in the malice determination. 94 S.W.3d at 591. And in upholding a finding of actual malice, the Court noted that, while a mere failure to investigate is not enough to show malice: ... "[W]hat is so striking about the record in this case is the complete absence of any evidence that a single witness, besides Gates, ever concurred in Bunton's accusation of misconduct against [local district judge] Bentley." *Id.* at 601.

14

2.    **Actual Malice:**  *Clear and specific circumstances establish a prima facie case that Reyna knew the claim that Baldridge had a conflict of interest was false, or that he entertained serious doubts about its truth.*

At the time of the libelous publication in May, 2013, Irene Baldridge had served on the Leon Valley City Council for a total of twenty years, ten of those as mayor. (Baldridge Affidavit, CR63). Art Reyna had served with her on the city council since 2007. (CR91).

In March 2011, the city council heard the application of Daniel Bee and others to rezone approximately 40 acres of land, called "Seneca West", from R-1 to R-6. R-6 is smaller lot residential and would allow more density than R-1. The residents of the adjacent R-1 neighborhood were almost uniformly opposed to the rezoning. Councilmen Art Reyna and Rudy Garcia were proponents of the rezoning on behalf of the developer, and called public meetings of the neighbors to try to persuade them to support it. (Baldridge Affidavit, CR63-64).

At the City Council hearing on the rezoning it became clear based on the evidence and the comments of the Council that a majority of the Council, including Baldridge, was opposed to the rezoning, and that it would not pass. Although Councilmen Reyna and Garcia had vigorously supported the zoning case, they voted against it with the rest of the unanimous five member Council. *Id.*

15

The next time the 2011 zoning case came to Baldridge's attention was in February 2013, when she was served with a lawsuit by which Daniel Bee falsely accused her of having had a conflict of interest as a realtor in the March 1, 2011 zoning case. (CR64). The circumstances indicate that Daniel Bee and Art Reyna cooperated in filing the suit almost two years after the zoning case and at the beginning of the 2013 election season. *Id.* The suit was filed against two of the three candidates – Monica Alcocer and Baldridge – who were opposed to Reyna's and Bee's preferred candidates for Leon Valley City Council. *Id.* Reyna's candidates – Biever, Diaz and Ruiz - could be counted on to support Bee's zoning case in the future and to do Reyna's bidding. The suit was also filed against six other neighbors who had vocally opposed the zoning case, as well as against the City of Leon Valley. *Id.*

Baldridge has filed a Motion for Sanctions through her attorney against Bee in the suit he filed because the suit is groundless and brought for an improper purpose. (CR64-66).

As shown, on or about May 6, 2013, Art Reyna, as a fellow member of the Leon Valley City Council, mailed a campaign piece to Leon Valley voters in which he quoted the lawsuit by Daniel Bee and others, and adopted its allegations. (CR53). The piece was also distributed at the polls on May 11. *Id.*

16

Clear and specific prima facie evidence that, as of May 2013, Reyna at least entertained serious doubts about the truth of the claim that Baldridge had a conflict of interest in the March 1, 2011 zoning case includes the following:

a. **Direct evidence that Reyna seriously doubted the truth of the claim.** Reyna does not say in this record that he believed that Baldridge had a conflict of interest at the time he made the statement. His counsel admitted at the hearing: "There's no claim by Art Reyna that those allegations [by Bee against Baldridge] were exactly true." (RR43). *See Clark v. Jenkins,* 248 S.W.3d at 435 (evidence of malice where defamation defendant did not say he believed libelous statements about public official).

b. **Not even a cursory investigation.** Such a serious public claim of official misconduct against Baldridge, a fellow councilmember and former 10 year mayor with whom Reyna had served 6 years, would normally not be made in the absence of at least some investigation. Yet any cursory investigation would have revealed the falsehood of the claim. Had Reyna merely asked Baldridge or Dave Matlock, the representative of Tristone Homes which supposedly had a contractual or agency relationship with her at the time of the zoning case, he would have learned the facts. (Baldridge Affidavit, CR74-76); Matlock Affidavit, CR86-88). Reyna's failure to do any checking on the validity of the claim indicates "a purposeful avoidance of the

17

truth," which shows actual malice. *Bentley v. Bunton,* 94 S.W.3d at 596; *Curtis Publishing Co. v. Butts, supra,* 388 U.S. at 156, 170.

c. **Timing indicates Reyna did not believe the claims.** The libelous claim against Baldridge was only made by Reyna in the few days before the election, as part of the campaign. (CR65). This is an important circumstance because first, it was timed to prevent rebuttal by the candidate before the election. An inference can be drawn that Reyna knew the claim was easily proven false. Otherwise, if evidence supported it, why wait until the end of the political campaign to make it?

*Reyna never made the claim against Baldridge in public before or after the campaign piece.* He has never pointed to any evidence supporting his claim against Baldridge other than the bald allegation of Bee, his political ally, and a mystery audiotape which he does not quote or provide to the Court. (CR139). See *Curtis Publishing Co. v. Butts, supra,* 388 U.S. at 158; *Bentley,* 94 S.W.3d at 601.

Additionally, Leon Valley had a candidates' forum in or about April 2013 in which all six candidates were asked extensive questions. There was no assertion by any candidate or citizen of the claim of conflict of interest, nor of the claims against candidates Alcocer and Hill, even though "the criminal wrongdoing" had been allegedly committed months or years before.

18

(CR65). Why would such serious charges be unknown to anyone until three days before the election?

d.      **Post-election comments by Reyna indicate he did not believe the claims**.

In "The Reyna Report" to Leon Valley citizens immediately after the May 2013 election (CR61), Reyna did not call for an investigation into the "criminal wrongdoing" in office by the recently defeated plaintiffs, nor was he simply silent about their service. Rather he said, "with this year's changes [in city council members] we express our gratitude to Irene Baldridge and Kathy Hill for their service to the city…"

If Reyna thought gratitude for their prior service was appropriate, he could not have believed that they seriously violated the public trust as he outrageously claimed in the campaign mailer a few days before the election.

e.      **Pattern of lying about political opponents.** The Affidavit of Chris Riley (CR42-46), who has served as Leon Valley mayor since 2004, established three instances where Defendant Reyna also made knowingly or recklessly false statements about her as his political opponent. In May 2014, Reyna published a campaign piece falsely claiming that his opponent, the mayor, intended to "shrink [four-lane] Evers Road down to two lanes." (CR44-45) This statement was made even though he had previously publicly stated that there was no plan to close lanes. (CR46). In September 2010,

19

he falsely accused the mayor and the city's Economic Development Director of "money laundering." In December, 2013, he falsely told at least one constituent in seeking the constituents' support, that the mayor was not running for reelection. These incidents show a pattern of deliberate political lying by Reyna to promote his own political purposes, both before and after the libel in question.

f. **Claim of conflict of interest is illogical**. Additionally, neither between March 1, 2011, the date of the zoning case, and February, 2013, the date Bee's suit was filed, nor at any other time did Baldridge take action on behalf of Tristone or any other real estate purchaser or developer with respect to the property in question. *If Baldridge had a business interest in the property which would prompt her to deny rezoning, why did she take no action thereafter to profit from such denial?* This question must have raised serious doubts about the existence of a conflict in Reyna's mind. See *Harte Hanks, supra,* 491 U.S. at 691 (improbability of the claim as proof of actual malice).

g. **Direct evidence: Affidavit of Art Reyna in the Bee lawsuit, CR91.** In June, 2014, Reyna provided an affidavit in support of the Plaintiffs in the Bee suit. The Affidavit states that Reyna understood that Baldridge "had, *or may have had*, a conflict of interest..." For Reyna to say that Baldridge "may have had" a conflict of interest is to admit that Reyna

20

subjectively possessed significant doubt about whether she did have such a conflict; this is tantamount to an admission of reckless disregard for the truth when he publicly declared that Baldridge had such a conflict.

(The Affidavit also supports the contention of Baldridge that Reyna conspired with Bee, his political ally, to file a groundless lawsuit against Baldridge and Alcocer to help defeat them in their city council races. To prove this claim will require full discovery after remand).

h.   ***Reyna was strongly motivated to lie about Baldridge, Hill and Alcocer***. Circumstances indicate that Reyna and Bee decided to use the false allegations against Baldridge to defeat her re-election bid and to give Reyna control over City Hall by electing his preferred candidates, which he accomplished. See *Bentley*, 94 S.W.3d at 591 (motive can be considered in actual malice determination).

## RESPONSE TO APPELLANT'S ISSUES NO. 3, 4 and 5

## KATHY HILL PRESENTED CLEAR AND SPECIFIC EVIDENCE THAT REYNA LIBELED HER MALICIOUSLY

I.   **Kathy Hill presented clear and specific prima facie evidence that the published material was false and defamatory.**

A.   **The material was defamatory.** The campaign piece states that city council member Hill "divert[ed] the public proceeds of the City's 60[th]

21

birthday party to a private interest group "and that consequently her "record is clear – [she] chose private gain over the public good." (Appendix 1).

To "divert," by its ordinary meaning here, means: "...4. *Figurative.* to embezzle; steal: *The dishonest treasurer diverted funds from the club's treasury.*" World Book Dictionary, Vol. 1, p. 615 (1988)[2]. The word "divert" is frequently found in criminal cases dealing with embezzlement or conversion of trust funds, e.g., TEX. PROP. CODE ANN. §§162.005, 162.032; *Kirschner v. State,* 997 S.W.2d 335, 343 (Tex. App.—Austin 1999, pet. for rev. refused) (diverting construction trust funds is a Class A misdemeanor, and a felony if diverted with intent to defraud). *See also, Moak v. Huff,* 2012 WL 566140 *8 (Tex. App.—San Antonio 2012, no pet.) (DTPA defendant "diverted" funds from mother's property sale for her own benefit).

Thus, when Reyna publicly claimed that Hill "chose" to "divert public proceeds" he made a claim that she violated Texas Penal Code §39.02(a)(2) (A public servant commits an offense if she intentionally misuses anything of value that has come into her custody or possession by virtue of her office); *Talamantez v. State*, 829 S.W.2d 174 (Tex. Crim. App. 1992). Such behavior is "official misconduct" which can result in immediate removal from office. §21.022, *et seq.*, Texas Local Government Code.

---

[2] See also, Webster's New Universal Unabridged Dictionary (1983): "divert: 1. To turn (a person or thing) aside (from a course); to deflect; as to *divert* a river from its usual channel; to *divert* appropriated money to other objects."

A false claim of such conduct is defamation per se in that it imputes a crime and injures her in her office as a council member and in her business. *Gray v. H.E.B. Food Store No. 4, supra; Hancock v. Variyam, supra.*

B.    **The material was false**.  Clear and specific evidence of a prima facie case of falsity is proven by:

(1) Hill's affidavit (CR51-61);

(2) the proclamation of "Leon Valley Days 2012" by Mayor Riley in April 2012 (CR60), declaring that the City of Leon Valley and the Leon Valley Historical Society (LVHS) would "partner" to organize celebrations of the City's 60th anniversary of incorporation and the 150th anniversary of the Huebner-Onion Homestead and Stagecoach Stop, on October 19 and 20, 2012.  (The City and the LVHS had been engaged in a cooperative relationship with respect to the Huebner-Onion Homestead for over ten years).  (CR52);

(3) the City Council meeting minutes of June 19, 2012, (CR151), approving the $10,000 budget for the "joint commemoration activities;" and

(4) the Affidavit of Vickie Wallace, Finance Director of the City of Leon Valley, (CR48-49), showing full accounting of the $10,000.

Hill's Affidavit explains in detail that the City's funds were intended for and entirely used to promote the joint celebration and to pay for the Family

23

Festival in Raymond Rimkus Park on Saturday, October 20, 2012. Decisions for the events were made by a planning committee "whose members were accepted by the City Council by unanimous vote." (CR53). The planning process was fully transparent and regularly reported to the council and the public. (CR53). As Hill testified in her Affidavit:

> "No portion of the $10,000 was diverted to the LVHS and a full accounting of the event was produced by the City of Leon Valley Finance Director, Vicky Wallace. No question was ever raised regarding the expenditures of funds by the city or the fundraising activities of the Leon Valley Historical Society... The false campaign piece is the only time the claim has been raised by anyone." (CR53)

Thus, Hill has presented abundant, clear and specific evidence that she did not commit the crime of "divert[ing] the public proceeds of the City's 60[th] birthday party to a private interest group."

## C. General damages are both proven and presumed.

Hill's affidavit established damages for humiliation, embarrassment, anger, mental anguish, and reputation damage as a result of the libel, and such damages are presumed. *Waste Management of Texas, Inc., supra,* 434 S.W.3d at 151.

## II. Kathy Hill presented clear and specific prima facie evidence that Reyna acted with actual malice.

A. Hill incorporates herein much of the prior discussion of malice in Sections III A and B of this Brief (pages 7-20, *supra*), including the legal

24

authorities, because it applies equally to her claim that Reyna acted with actual malice in falsely accusing her of official misconduct.

Specifically, *Reyna's timing of the distribution* of the false piece a few days before the election indicates he knew it would not withstand scrutiny. This was further shown by the fact that neither he nor anyone else ever made the claim of diversion of public funds before or after the campaign piece. Reyna's claim of official misconduct only lasted long enough to defeat the candidates, and then it disappeared. This supports the inference that Reyna concocted malicious lies simply to take over city hall – which he successfully did. (CR54).

*Reyna's pattern of lying* about his political opponents (CR42-45) applies equally with respect to both Hill and Baldridge to show an inference of knowing or reckless disregard of the truth.

**The record contains no claim by Reyna that he believed his own statement that Hill diverted public funds to a private group.** In response to limited court-ordered discovery, Reyna attached as "Exhibit A" documents which showed his attempts to investigate his claims. These documents are the agenda and minutes of the June 19, 2012 city council meetings, CR142-153; a Fact Sheet for Potential Sponsors (CR154); and a statement of Leon Valley Days expenses, CR155. A careful review of those documents does not support a claim that Hill diverted public funds.

As shown in Hill's affidavit (CR54), other evidence of malice includes:

(1) *Reyna, as a councilmember, had full access to the financial records of the City of Leon Valley.* Such records show that every dime of the authorized $10,000 in city money was spent for the October 20 city festival in Rimkus Park. (CR54).

(2) *The claim of diversion of city funds was never raised for discussion or investigation* by any councilmember during the period October 20, 2012, through May 2013. There was no council agenda item, either before or after the false campaign circular was sent in May 2013, which would show that any question existed on the propriety of expenditures by Hill or the committee, or on the propriety of the fundraising done by the LVHS at the October 19 annual fundraising dinner. In other words, to this day, no citizen or councilmember has publicly claimed that any financial impropriety occurred or that any city funds were diverted to the LVHS. The campaign piece is the only place that claim was ever made, even after Reyna had successfully achieved domination of the council by using it;

(3) *Reyna was motivated to make these false assertions because he stood to gain politically* if his candidates were elected. They would be beholden to him, in that he funded and created a campaign piece which effectively depicted their opponents as criminally corrupt. In fact, the three candidates he backed with the campaign piece all won. They were led by Reyna and supported him in almost every vote from May 2013 until May 2014, when Reyna was defeated in his run for mayor.

(4) *Neither Reyna, one of Hill's colleagues on the city council, nor anyone on his behalf ever asked Hill* about any claimed diversion of public money before or after publishing the false campaign piece;

(5) *Reyna publicly thanked Hill* for her public service after she was defeated in her re-election bid. (CR61). This indicated he did not believe Hill had actually diverted public funds.

The above evidence establishes a prima facie case that Reyna did not believe the claim against Hill or entertained serious doubts about it.

26

## RESPONSE TO APPELLANT'S ISSUE NO. 6

## ATTORNEY'S FEES ARE NOT MANDATORY UNDER §27.009(A)(I) UNLESS "JUSTICE AND EQUITY" REQUIRE THEM.

In *Combined Law Enforcement Associations of Texas v. Sheffield*, 2014 WL 411672 *11 (Tex. App.—Austin 2014, pet. filed), the Court states:

> "While the introductory language of [section 27.009(a) of the TCPA] uses the seemingly mandatory term "shall award," the subsequent language tempers the conditions for making an award with discretionary terms like "justice" and "equity" and "sufficient to deter" ... A trial court may decide that justice and equity do not require that costs, fees, or expenses be awarded and may determine that no sanctions are needed to deter the plaintiff from bringing similar actions."

Under this reasonable interpretation of the statute, even if this Court found that the trial court should have dismissed the suit, the trial court would still have discretion on remand on whether to award fees.

WHEREFORE, PREMISES CONSIDERED, Appellees Irene Baldridge and Kathy Hill pray that the Court affirm the trial court's judgment denying the Motion to Dismiss; and for such other relief to which they may be entitled.

Respectfully submitted,

Edward P. Cano
Texas Bar No. 03756700
201 W. Poplar St.
San Antonio, Texas 78212
(210) 223-1099 (telephone)
(210) 212-5653 (facsimile)
edcanoattorney@sbcglobal.net

RILEY AND RILEY
ATTORNEYS AT LAW

*Darby Riley*

_____

DARBY RILEY
Texas Bar No. 16924400
320 Lexington Avenue
San Antonio, Texas  78215
(210) 225-7236 (telephone)
(210) 227-7907 (facsimile)
darbyriley@rileylawfirm.com
ATTORNEYS FOR APPELLEES

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certified that this Brief contains 6,077 words (excluding the caption, table of contents, table of authorities, signature, proof of service, certification, and certificate of compliance).  This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text.  In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*Darby Riley*

_____

Darby Riley

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Brief of Appellees Irene Baldridge and Kathy Hill has been sent on this ___26th___ day of March, 2015 to the following counsel of record:

Mr. Ronald B. Prince        E-file:  ron@princecontreras.com
Mr. Floyd Steven Contreras  E-file:  Floyd@princecontreras.com
PRINCE CONTRERAS PLLC
417 San Pedro Avenue
San Antonio, Texas  78212

*Darby Riley*

_____

DARBY RILEY

28

# APPENDIX 1

# "When private interests and personal gain matter more than the public good, we need new leadership."

Dear Leon Valley Neighbor:

When there's a plan to plant 10,000 trees but none to hire additional police officers, we need different priorities at Leon Valley City Hall. But when private interests and personal gain matter more than the public good, we need new leadership.

That's why I'm writing to ask you to join me in voting Abraham Diaz, Ricardo Ruiz and Paul Biever for Leon Valley City Council. Each of these candidates supports focusing city government on what matters most: safer neighborhoods, better roads and drainage and keeping taxes low by attracting the right types of new businesses to our community.

Additionally, Abraham, Ricardo and Paul all have experience needed to make City Hall responsive to you and your neighbors. Abraham has served our community working to bring new businesses here. Ricardo is a successful Leon Valley small business owner who meets a payroll, manages a budget and creates jobs. On City Council, Paul has consistently called for more accountability in the use of our tax dollars.

Together, they have the skills needed to set a new direction on City Council but they need your vote on Saturday.

Their opponents in the race – Irene Baldridge, Monica Alcocer and Kathy Hill – have each demonstrated that their own interests matter more than yours at City Hall. Whether the recent lawsuit by Leon Valley property owners outlining criminal wrongdoing on the part of Baldridge and Alcocer for personal gain or Hill's diverting the public proceeds of the City's 60th birthday party to a private interest group, their record is clear – they chose private gain over the public good.

Join me in making Leon Valley City Hall responsive to you. Vote Abraham Diaz, Ricardo Ruiz and Paul Biever for Leon Valley City Council when you vote in Saturday's election.

Arthur "Art" C. Reyna, Jr.
Leon Valley City Councilman, Place 2

**ABRAHAM DIAZ**
Community Volunteer



**DIAZ**
FOR LEON VALLEY CITY COUNCIL

**RICARDO RUIZ**
Business Owner



**RUIZ**
FOR LEON VALLEY CITY COUNCIL

**PAUL BIEVER**
Civic Leader



**Paul BIEVER**
CITY COUNCIL, PLACE 5

Political Advertisement
Paid by Arthur "Art" C. Reyna, Jr.

PRSRT STD
US Postage
PAID
San Antonio, TX
Permit No. 3260

# When private interests and personal gain matter more than the public good, we need new leadership.

2013-CI-03399
225TH JUDICIAL DISTRICT COURT
WM RANCHER ESTATES JOINT VENTURE ET AL
DATE FILED: 02/28/2013

**47.** On March 1, 2011, Defendant **IRENE BALDRIDGE** violated the Texas Local Government Code, Chapter 171, §§ 171.001; 171.002 & 171.004 (a), Regulation of Conflicts of Interest of Officers of Municipalities, et al., when **she participated in a public vote to deny the approval of the zoning request by the PLAINTIFFS and their purchaser developer, because she had a contractual or agency relationship with competing purchasers, buyers and/or developers.** Page 10, 2013-CI-03399, 225th Judicial District Court, Wm. Rancher Estates Join Venture Et Al vs. City of Leon Valley... Irene Baldridge, Individually... Monica Alcocer

**59.** When Plaintiff **DANIEL S. BEE,** witnessed the taking of the dirt by Defendants, **ALBERT AND MONICA ALCOCER,** and protested the unpermitted altering of the flow of water on the flood plain by Defendants **ALBERT AND MONICA ALCOCER,** he attempted to contact the authorities, but before he could do so, **the Defendant MONICA ALCOCER, responded by aggressively, physically assaulting Plaintiff DANIEL S. BEE as he stood on the PLAINTIFFS' own land,** clearly on the Property in Question, which assault caused injuries and damages to DANIEL S. BEE. Page 13, 2013-CI-03399, 225th Judicial District Court, Wm. Rancher Estates Join Venture Et Al vs. City of Leon Valley... Irene Baldridge, Individually... Monica Alcocer

PLAINTIFFS' ORIGINAL PETITION, APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION, DECLARATORY JUDGMENT ACTION, and REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

## Leon Valley Election Day Saturday, May 11

# APPENDIX 2

CIVIL PRACTICE AND REMEDIES CODE

TITLE 2. TRIAL, JUDGMENT, AND APPEAL

SUBTITLE B. TRIAL MATTERS

CHAPTER 27.   ACTIONS INVOLVING THE EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS

Sec. 27.001.   DEFINITIONS.   In this chapter:

(1)   "Communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.

(2)   "Exercise of the right of association" means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests.

(3)   "Exercise of the right of free speech" means a communication made in connection with a matter of public concern.

(4)   "Exercise of the right to petition" means any of the following:

(A)   a communication in or pertaining to:

(i)   a judicial proceeding;

(ii)   an official proceeding, other than a judicial proceeding, to administer the law;

(iii)   an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;

(iv)   a legislative proceeding, including a proceeding of a legislative committee;

(v)   a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;

(vi)   a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;

(vii)   a proceeding of the governing body of any political subdivision of this state;

(viii)   a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or

(ix)   a public meeting dealing with a public purpose,

including statements and discussions at the meeting or other matters of public concern occurring at the meeting;

(B) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(C) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(D) a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

(E) any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

(5) "Governmental proceeding" means a proceeding, other than a judicial proceeding, by an officer, official, or body of this state or a political subdivision of this state, including a board or commission, or by an officer, official, or body of the federal government.

(6) "Legal action" means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief.

(7) "Matter of public concern" includes an issue related to:
(A) health or safety;
(B) environmental, economic, or community well-being;
(C) the government;
(D) a public official or public figure; or
(E) a good, product, or service in the marketplace.

(8) "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant.

(9) "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if the person has not yet qualified for office or assumed the person's duties:
(A) an officer, employee, or agent of government;
(B) a juror;
(C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a

cause or controversy;

    (D) an attorney or notary public when participating in the performance of a governmental function; or

    (E) a person who is performing a governmental function under a claim of right but is not legally qualified to do so.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.


   Sec. 27.002. PURPOSE. The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.


   Sec. 27.003. MOTION TO DISMISS. (a) If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action.

   (b) A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action. The court may extend the time to file a motion under this section on a showing of good cause.

   (c) Except as provided by Section 27.006(b), on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.


   Sec. 27.004. HEARING. (a) A hearing on a motion under Section 27.003 must be set not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing, upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c).

   (b) In the event that the court cannot hold a hearing in the time

required by Subsection (a), the court may take judicial notice that the court's docket conditions required a hearing at a later date, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c).

(c)  If the court allows discovery under Section 27.006(b), the court may extend the hearing date to allow discovery under that subsection, but in no event shall the hearing occur more than 120 days after the service of the motion under Section 27.003.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.
Amended by:
    Acts 2013, 83rd Leg., R.S., Ch. 1042 (H.B. 2935), Sec. 1, eff. June 14, 2013.


Sec. 27.005.  RULING.  (a)  The court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion.

(b)  Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of:
        (1)  the right of free speech;
        (2)  the right to petition; or
        (3)  the right of association.

(c)  The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question.

(d)  Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.
Amended by:
    Acts 2013, 83rd Leg., R.S., Ch. 1042 (H.B. 2935), Sec. 2, eff. June 14, 2013.

Sec. 27.006. EVIDENCE. (a) In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.

(b) On a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.

Sec. 27.007. ADDITIONAL FINDINGS. (a) At the request of a party making a motion under Section 27.003, the court shall issue findings regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation.

(b) The court must issue findings under Subsection (a) not later than the 30th day after the date a request under that subsection is made.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.

Sec. 27.008. APPEAL. (a) If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.

(b) An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005.

(c) Repealed by Acts 2013, 83rd Leg., R.S., Ch. 1042, Sec. 5, eff. June 14, 2013.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.
Amended by:
Acts 2013, 83rd Leg., R.S., Ch. 1042 (H.B. 2935), Sec. 5, eff. June 14, 2013.

Sec. 27.009.  DAMAGES AND COSTS.  (a)  If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party:

(1)  court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and

(2)  sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

(b)  If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.


Sec. 27.010.  EXEMPTIONS.  (a)  This chapter does not apply to an enforcement action that is brought in the name of this state or a political subdivision of this state by the attorney general, a district attorney, a criminal district attorney, or a county attorney.

(b)  This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

(c)  This chapter does not apply to a legal action seeking recovery for bodily injury, wrongful death, or survival or to statements made regarding that legal action.

(d)  This chapter does not apply to a legal action brought under the Insurance Code or arising out of an insurance contract.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.
Amended by:
Acts 2013, 83rd Leg., R.S., Ch. 1042 (H.B. 2935), Sec. 3, eff. June 14, 2013.

Sec. 27.011.  CONSTRUCTION.  (a)  This chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions.

(b)  This chapter shall be construed liberally to effectuate its purpose and intent fully.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.